# In the United States Court of Federal Claims

No. 21-1376C
Filed: February 17, 2022

---

**KOREY BRINKMAN, et al.,**

*Plaintiffs,*

v.

**THE UNITED STATES,**

*Defendant.*

---

*Gregory Keith McGillivary*, McGillivary Steele Elkin LLP, Washington, D.C., for Plaintiffs.

*Tanya B. Koenig*, Trial Attorney, *Elizabeth M. Hosford*, Assistant Director, *Martin F. Hockeny, Jr.*, Acting Director, *Brian M. Boynton*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., with *Leonard H. DePasquale*, Chief Counsel, FHFA-OIG, for Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**TAPP, Judge.**

Generally speaking, uncodified agency policies are not enforceable by the United States Court of Federal Claims. In this civilian pay case, the United States moves to dismiss Plaintiffs' claims that the Federal Housing Finance Agency deprived them of overtime benefits to which they are entitled under Title V and the agency's premium pay policy or, alternatively, the Fair Labor Standards Act. Specifically, the United States argues that agency policies are not money-mandating sources of law and therefore this Court lacks jurisdiction. The Court agrees with that contention. However, the United States also bears the burden at this stage to establish that Plaintiffs are not afforded similar statutory protections. The United States has failed to do so. Therefore, the United States' Motion is denied.

## I.   Background[1]

Plaintiffs are sixteen current and former criminal investigators of the United States Federal Housing Finance Agency ("FHFA"), in its Office of Inspector General ("FHFA-OIG"). (Am.

---

[1] In considering the pending Motion to Dismiss, the Court assumes the facts alleged in Plaintiffs' Amended Complaint, (ECF No. 6), to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

Compl. at 2, ECF No. 6).  Because the structure of that agency is relevant to the facts of this case, a synopsis of its objective and inception are provided for illustrative purposes.

### A.  History and Structure of the Federal Housing Finance Agency

In the aftermath of the 2008 housing crisis, mortgage companies suffered significant losses that carried the potential to jeopardize the national economy. *See generally Collins v. Yellen*, 141 S. Ct. 1761 (2021) (providing a history of the FHFA). To combat the nation's concerns, Congress established the FHFA by enacting the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. 110-289, 122 Stat. 2654, 12 U.S.C. § 4501 *et seq*. The FHFA is responsible for the supervision, regulation, and housing mission oversight of mortgage companies such as the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"). 12 U.S.C. § 4511; *see also* National Housing Act Amendments of 1938, Pub. L. 75-424, 52 Stat. 8, 23; Federal Home Loan Mortgage Corporation Act, Pub. L. 91-351, 84 Stat. 451.

Relevant here, HERA delegates the FHFA the power to act as "an independent agency" tasked with regulating the mortgage companies and, if necessary, acting as their conservator or receiver. §§ 4511, 4617. Given that status, the FHFA is not funded through the ordinary appropriations process that funds many other government agencies. §§ 4516(a). It is thus classified as a non-appropriated fund instrumentality, which is defined as a federal government entity whose "monies do not come from congressional appropriation but rather primarily from [their] own activities, services, and product sales." *El–Sheikh v. United States*, 177 F.3d 1321, 1322 (Fed. Cir. 1999) (internal quotations omitted). The FHFA is funded by assessments on its regulated financial institutions: Fannie Mae, Freddie Mac, and the Federal Home Loan Banks. § 4516(a). The FHFA-OIG is an independent component of the FHFA funded from those same assessments. (Am. Compl. at 2).

Congress installed a single Director as head of the FHFA to set salaries and payments of FHFA employees. §§ 4512(a), (b)(2). Regarding employee compensation, HERA provides that:

> [T]he FHFA Director may appoint and fix the compensation of such officers and employees of the Agency as the Director considers necessary to carry out the functions of the Director and the Agency. Officers and employees may be paid without regard to the provisions of Chapter 51 and subchapter III of Chapter 53 of Title V relating to classification and General Schedule Pay rates.

12 U.S.C. § 4515(a). Stated plainly, this provision allows the FHFA to pay its employees at rates with near indifference to the General Schedule (GS) pay rates that apply to most other federal agencies. *See* Office of Personnel Management, General Schedule Classification and Pay, *available at* https://www.opm.gov/policy-data-oversight/pay-leave/pay-systems/general-schedule/ (last visited Feb. 11, 2022). Similarly, under 12 U.S.C. § 1833b, the FHFA has independent authority to "establish and adjust" employees' compensation and benefits in a manner determined solely by the FHFA in accordance with applicable provisions of the law. § 1833b(a).

The FHFA is in a cast of financial institution regulators that Congress exempts from limitations of the GS pay scale. Similar exemptions exist for the Federal Deposit Insurance Corporation, the Comptroller of the Currency, the National Credit Union Administration Board, the Office of Financial Research, the Bureau of Consumer Financial Protection, and the Farm Credit Administration. § 1833b. Like those regulatory agencies, the FHFA and its component, the FHFA-OIG, offer enhanced pay and benefits to its employees.

### B.  Law Enforcement Availability Pay and the Fair Labor and Standards Act

Plaintiffs initiated this litigation in an effort to recover payments allegedly owed to them either by the Law Enforcement Availability Pay Act ("LEAPA") as it is codified in Title V or, alternatively, overtime pay afforded to them under the Fair Labor Standards Act ("FLSA"). The Court thus provides a cursory overview of those statutory schemes.

Congress passed LEAPA to benefit criminal investigators who routinely worked more than eight hours each day. Pub. L. No. 103–329, 108 Stat. 2425 (1994) (codified at 5 U.S.C. § 5545(a); *see also Floyd v. District of Columbia*, 129 F.3d 152, 154 (D.C. Cir. 1997) (providing a history of LEAPA). On its face, LEAPA increased the average workday of federal criminal investigators by two hours and awarded all investigators Law Enforcement Availability Pay ("LEAP") at the rate of 25 percent of their basic pay, ostensibly eliminating uncontrollable overtime. 5 U.S.C. § 5545a(c), (d). In practice, LEAPA requires criminal investigators to be available for two more hours each workday; in return, those employees automatically receive an additional 25 percent of basic pay instead of the overtime pay they would have otherwise received. *See Floyd*, 129 F.3d at 154.

Under Title V, LEAP does not come without limitation; it is subject to a statutory cap. 5 U.S.C. § 5547(a). Title V's premium pay provisions, including § 5545a, apply "only to employees in Grade [GS] 15 or below, and an employee may not receive overtime if such payment would increase the employee's aggregate compensation in excess of the maximum allowable rate for Grade 15 employees."[2] *Doe v. United States*, 463 F.3d 1314, 1351 (Fed. Cir. 2006) (citing 5 U.S.C. § 5547); *see also Adams v. United States*, 141 Fed. Cl. 428, 431 (2019); *Aletta v. United States*, 70 Fed. Cl. 600, 604 (2006).

Relatedly, the FLSA, 29 U.S.C. § 201 *et seq.*, imposes minimum wage, overtime, and record-keeping requirements for the protection of employees. *See* 29 U.S.C. §§ 206(a) (minimum wage), 207 (overtime), 211(c) (record-keeping). Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Ark.-Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)). Employers who violate the FLSA are liable to covered employees for their unpaid overtime compensation. 29 U.S.C. § 216(b).

---

[2] Per 5 U.S.C. § 5547(a)(2), LEAP is also limited to "the rate payable for level V of the Executive Schedule." That provision is not at issue in this case.

## II.   Discussion

Plaintiffs allege that the FHFA-OIG has failed to correctly provide premium pay in accordance with the agency's Premium Pay Policy and Title V (Count I). Should that claim fail, Plaintiffs alternatively allege that they are entitled to recover unpaid overtime pay pursuant to the FLSA (Count II). (*See* Am. Compl.). The United States moves to dismiss both counts. (*See* Mot. to Dism., ECF No. 9).

As to Count I, the United States argues that the Court lacks subject matter jurisdiction because HERA, the statutory scheme Plaintiffs are paid under, is not a money-mandating statute and because the agency's Premium Pay Policy lacks the force of law. (*Id*. at 7–8). In the alternative, the Government also asserts that Count I should be dismissed for failure to state a claim upon which relief can be granted because their requested relief is barred by Title V's statutory cap. (*Id*. at 9–13). As to Count II, the United States argues it should be dismissed because Plaintiffs are classified as FLSA exempt or, alternatively, that Plaintiffs should be ordered to amend their pleadings to reflect "which of the 16 plaintiffs are asserting that claim." (*Id*. at 13–15).

As explained below, the Court finds that Plaintiffs have stated a plausible claim entitling them to LEAP under Title V, but that the statutory cap prescribed by § 5547(a) would also apply. Admittedly, the FMHA-OIG Premium Pay Policy does not incorporate a statutory cap. That exclusion, an uncodified policy, lacks the force of law, and cannot waive a pre-existing statutory requirement. Therefore, to the extent Count I requests relief in excess of the allowable amount under Title V's statutory cap, it would fail to state a claim upon which relief can be granted. As provided below, Plaintiffs are granted limited discovery in order to support or withdraw Count I. Resolution of Count II, which requires the Court to determine whether overtime provisions of the FLSA apply, also involves determinations inappropriate for this prefatory stage of litigation. Therefore, the United States' Motion to Dismiss as to Count II is also denied.

### A.   *Count I: Failure to Provide LEAP Benefits*

Count I alleges that the FHFA-OIG failed to pay Plaintiffs LEAP as required by 5 U.S.C. § 5545(a) since May 20, 2015. (Am. Compl. at 6). The United States moves to dismiss that claim alleging that since Plaintiffs' claims are based solely on Title V and they are paid under HERA, their claims must also be based on HERA. The United States contends that this argument, should the Court view Plaintiffs' claims through a HERA lens, strips the Court of jurisdiction because HERA is not a money-mandating statute. (Mot. to Dism. at 7–8). To the extent Plaintiffs argue that the violation of HERA is through the FHFA's Premium Pay Policy, the United States argues that it must also fail because internal policies lack the force of law. (*Id*. at 9).

Under RCFC 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Reynolds v. Army & Air Force Exch. Serv*., 846 F.2d 746, 748 (Fed. Cir. 1988). This Court's jurisdiction to entertain claims and grant relief depends on the extent to which the United States has waived sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976). When faced with a motion to dismiss for lack of subject matter jurisdiction pursuant to the RCFC 12(b)(1), the Court must assume that all undisputed facts alleged in the complaint are true and

4

draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Moreover, the Court may look to evidence outside of the pleadings to ascertain the propriety of its exercise of jurisdiction over a case. *Rocovich v. United States*, 933 F.2d 991, 994 (Fed. Cir. 1991).

The Tucker Act provides the Court of Federal Claims with jurisdiction over claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act is itself "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *Testan*, 424 U.S. at 398. Therefore, claimants "must look beyond the Tucker Act to discover and plead a money-mandating predicate upon which to complete jurisdiction." *Westech Corp. v. United States*, 20 Cl. Ct. 745, 748 (1990) (citing *United States v. Connolly*, 716 F.2d 882, 885 (Fed. Cir. 1983)); *see also Dehne v. United States*, 970 F.2d 890, 893 (Fed. Cir. 1992); *Ashgar v. United States*, 23 Cl. Ct. 226, 230–31 (1991).

It follows then that to establish jurisdiction in a statutory suit, plaintiffs must effectively plead that the statute or regulation grants the plaintiff a cause of action. It is presumed that a statute ordinarily provides a cause of action "only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014). The Supreme Court has held that "[w]hether a plaintiff comes within 'the zone of interests' is an issue that requires [the Court] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* at 127 (some internal quotation marks omitted). Similarly, employees of a non-appropriated fund instrumentality can maintain statutory actions against their employer in this Court if the statute is money-mandating and contains an express waiver of sovereign immunity. *Taylor v. United States*, 49 Fed. Cl. 598 (2001), *aff'd*, 303 F.3d 1357 (Fed. Cir. 2002).

The United States Court of Claims has also held that, even though the plaintiff may not ultimately prevail, "a claimant who says he is entitled to money from the United States because a statute or a regulation grants him that right, in terms or by implication, can properly come to the Court of Claims, at least if his claim is not frivolous, but arguable." *Ralston Steel Corp. v. United States*, 169 Ct. Cl. 119, 125, *cert. denied*, 381 U.S. 950 (1965); *accord Sanders v. United States*, 219 Ct. Cl. 285, 295 (1979); *Eastport S.S. Corp.*, 178 Ct. Cl. at 606. All that is required is a "determination that the claim is founded upon a money-mandating source [of law] and the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source." *Perry v. United States*, 149 Fed. Cl. 1, 12–13 (2020) (quoting *Jan's Helicopter Service, Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008)). Thus, the jurisdictional pleading requirement is satisfied "when a plaintiff makes a non-frivolous assertion that [plaintiffs] are entitled to relief under the statute." *Jan's Helicopter*, 525 F.3d at 1307 n.8 (quoting *Brodowy v. United States*, 482 F.3d 1380, 1375 (Fed. Cir. 2007)). Whether a "claimant *actually* falls within the terms of the statute or regulation is a merits issue." *Perry*, 149 Fed. Cl. at 13 (emphasis in original).

The United States maintains that, because Plaintiffs have not identified violations of a specific HERA provision, Plaintiffs' claims are not within the Court's jurisdiction. The Court need not address this argument. As Plaintiffs note, however, their "claims are specifically grounded in 5 U.S.C. § 5545(a) and 5 C.F.R. § 550.181, *et seq*, and the Agency's own pay system . . .." (Pl.'s Resp. at 9, ECF No. 10). Thus, the United States' Motion as it relates to Count I turns on whether Plaintiffs have asserted a plausible claim under Title V. At this stage, the Plaintiffs have done so.

The United States seems to argue that Plaintiffs are excluded from Title V protections because the director of the FHFA has independent authority to "establish and adjust" its employees' compensation and benefits in a manner "determined solely" by the FHFA in accordance with "applicable provisions of law." 12 U.S.C. § 1833b(a). Further, HERA empowers the FHFA to set its pay scale "without regard to the . . . General Schedule Pay rates." § 4515. Although the director of the FHFA is armed with a wide breadth of discretion (which has been a separate subject of litigation[3]), the statute instructs that FHFA employees "*may* be paid without regard" to certain provisions of Title V. § 4515(a) (emphasis added). It does not mandate that Title V be entirely ignored nor does it expressly bar FHFA employees from protection under related statutory schemes. Even if it did, the statutory language permits the FHFA Director to fix employees' pay "without regard to the provisions of Chapter 51 and subchapter III of Chapter 53 of Title V . . .." § 4515(a). This does not include Subchapter V of Chapter 55, the provision delineating standards for premium pay.

Title V applies to employees of executive agencies. For purposes of Title V, "executive agency" means an Executive department, a Government corporation, and an independent establishment. § 105. "Independent establishments" are defined as those "in the executive branch (other than the United States Postal Service or the Postal Regulatory Commission) which [are] not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment." § 104. By the United States' admission, the FHFA is an independent agency. (Mot. to Dism. at 3 ("FHFA is an independent federal agency. . . FHFA-OIG is an independent component of FHFA and is funded from those same assessments.")); *see also* 12 U.S.C. § 4511.

Finding of factual frivolousness are appropriate where facts alleged rise to the level of the irrational or wholly incredible. *McCullogh v. United States*, 76 Fed. Cl. 1, 3 (2006) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). That is not the case here. It is plausible that Plaintiffs are afforded some protection by virtue of being employees of an independent agency whose organic statute does not explicitly preclude them from the relevant provisions of Title V. The United States does not effectively show that Title V is foreclosed to Plaintiffs, nor does it argue that the Court lacks jurisdiction because the subject provision of Title V is not money-mandating. While it is not readily discernable at this stage whether Plaintiffs' claim would

---

[3] *See Collins*, 141 S. Ct. 1761 (holding that the FHFA structure was unconstitutional because the Director could be removed by the President only for cause).

succeed under Title V, an action brought under Title V is not frivolous. Whether Plaintiffs here are protected under Title V is a merits question that cannot be determined at this stage.

It is noteworthy that some non-appropriated agency employees are explicitly excluded from other provisions of Title V. For instance, pursuant to 5 U.S.C. § 2015, employees paid from non-appropriated funds of the armed forces are not employees for various purposes under Title V with limited exceptions. Under § 5102(c)(14), Employee Classification guidelines do not apply to "employees whose pay is not wholly from appropriated funds of the United States." No such exclusion exists in the definitions for who is covered under Title V's premium pay provisions. § 5541. It is also significant that the FHFA's Premium Pay Policy directs employees to 5 U.S.C. Chapter 55 as an Authority/Reference. (Def.'s Reply Ex. B, ("Premium Pay Policy"), at 3, ECF No. 15-1).

The United States' next argument is that, if Plaintiffs are entitled to LEAP under Title V, they would also be subject to the cap established by § 5547(a). (Mot. to Dism. at 10). This argument is more compelling. Under § 5547(a), once a criminal investigator reaches the maximum rate of basic pay payable for GS-15, they are no longer eligible to receive LEAP. As stated above, HERA empowers the FHFA to set its pay scale "without regard to the . . . General Schedule Pay rates." 12 U.S.C. § 4515. Plaintiffs counter that this cap does not apply because the FHFA employees are paid pursuant to an agency-specific pay scale—the EL pay scale—rather than the GS pay scale that applies to most other federal employees. (Pl.'s Resp. at 14). To the extent Plaintiffs are protected under Title V's premium pay provisions, the Court finds that the statutory cap as it is set forth in § 5547(a) would apply to Plaintiffs.

Title V's premium pay provisions, including LEAP, apply "only to employees in [GS-15] or below, and an employee may not receive overtime if such payment would increase the employee's aggregate compensation in excess of the maximum allowable rate for [GS-15] employees." *Doe*, 463 F.3d at 1351 (citing 5 U.S.C. § 5547). Stated differently, LEAP is subject to a statutory cap. *See Lubow v. United States Dep't of State*, 923 F. Supp. 2d 28, 35–36 (D.D.C. 2013) (finding that Section 5547 unambiguously provides an annual cap on total pay). The annual cap applies despite any perceived unfairness in its application because "[a] cap on premium pay, by definition, prevents individuals from earning premium pay for certain hours that would have otherwise qualified. At some point, then, no additional premium pay can be earned." *Lubow*, 923 F. Supp. 2d at 36–37.

Pay under LEAP is capped so that "the payment does not cause the aggregate of basic pay and such premium pay for any pay period . . . to exceed the greater of" the rate of basic pay "for GS-15[,] including any applicable locality-based comparability payment under section 5304 or a similar provision of law and any applicable special rate of pay under section 5305 or similar provision of law[.]" 5 U.S.C. § 5547. Section 5304 pertains to "locality-based comparability payments" and an aimed reduction of pay disparities. Section 5305 on the other hand, references "special pay authority," specifically some with "higher minimum rates of pay for 1 or more grades or levels, occupational groups, series, classes, or subdivisions thereof." § 5305(a). Thus, the plain language of the annual cap statutory limitation indicates that Congress intended the provision's reach to extend in cases where the agency provides higher maximum rates of pay than other agencies. Further, § 5547 reaches "similar provisions of law." It does not take a cognitive leap to conclude GS-15 pay scale is intended to serve as a hard line for employees

entitled to premium pay under that statute. Thus, the Court finds that only those investigators who earn less than the § 5547(a) cap would be eligible to receive LEAP under the statute.

Admittedly, the pay policy does not explicitly implement a pay cap parroting § 5547. Plaintiffs thus allege that the FHFA's Pay System incorporates the LEAP but intentionally omits mention of a statutory cap, meaning the Agency is obligated to pay pursuant to its Premium Pay Policy without regard to the statutory cap of Title V. (Pl.'s Resp. at 15). Along with its preceding arguments, to the extent Plaintiffs cite a violation of the FHFA's pay policy as being enforceable to pay benefits beyond that statutory cap, the United States argues that the Court lacks jurisdiction because internal policies lack the force of law. (Mot. to Dism. at 9 (citing *Acevedo v. United States*, 824 F.3d 1365, 1370 (Fed. Cir. 2016) (finding that the agency's practice of providing danger pay to employees did not constitute a money-mandating source because it was not an "agency-wide policy or directive" and was "not akin to formal agency rules or binding written directives"))).

Helpfully, the United States attached the FHFA-OIG Premium Pay Policy as an exhibit to its Reply in Support of its Motion to Dismiss. The purpose of the policy is to "establish the [FHFA-OIG] policy for administering premium pay rule for (EL) employees." (Premium Pay Policy at 3). The policy incorporates LEAP in Section XIV, stating: "[b]ased on FHFA-OIG's needs, an employee shall receive LEAP for unscheduled duty in excess of the 40-hour workweek, if he/she occupies a position that meets the definition of a criminal investigator and includes primary duties classified in the GS-1811 occupational series." (Premium Pay Policy, Section XIIV at 14). However, Plaintiffs do not present meaningful support that this Court could enforce such an obligation.

Plaintiffs first cite *Ft. Stewart Schools v. FLRA*, 495 U.S. 641, 654 (1990) to show that administrative law mandates that "an agency must abide by its own regulations." (Pl.'s Resp. at 12). Plaintiffs next cite *Voge v. United States*, 844 F.2d 776 (Fed. Cir. 1988) to suggest that this Court has jurisdiction to review agency action "for compliance with established procedures" because "[i]t has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all." (*Id*.). Neither of these cases support Plaintiffs' position because they are both specifically relevant to agency *regulations*. During oral argument for the motion at bar, the United States asserted, and it was not controverted, that "[the policy is] not a regulation that was promulgated by the agency. It didn't go through notice and comment and the typical regulation procedures and, therefore, can't be a "money-mandating source" for purposes of this Court's jurisdiction." (Tr. of Oral Arg. at 12:8–12, ECF No. 18).[4] There is no indication in the record or otherwise that the FHFA followed applicable procedural requirements to give the premium pay policy regulatory effect. Absence of that fact is determinative. Finally, Plaintiffs' reliance on Judge O'Malley's dissent in *Braun v. Dep't of Health & Human Servs.*, 998 F.3d 1312 (Fed. Cir. 2021), is likewise misplaced because

---

[4] Procedural requirements for promulgating regulations can be found in the Administrative Procedure Act in Title V. *See* 5 U.S.C. § 552(a). The Court notes the apparent disparity in arguing that Title V protects the agency but could not simultaneously offer protections to its employees.

a dissenting opinion is not precedential or otherwise binding on this Court. No case cited by Plaintiffs suggests that the Court of Federal Claims has jurisdiction to adjudicate claims based on misapplication of an internal agency's pay policy.

As a general rule, a policy statement or interpretative regulation does not have the force of law. *See Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977). The Supreme Court has observed "opinion letters—like . . . policy statements, agency manuals, and enforcement guidelines . . . lack the force of law." *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000); *see also Butterbaugh v. Dep't of Justice*, 336 F.3d 1332, 1340 (Fed. Cir. 2003) (quoting *Christensen*, 529 U.S. at 587); *Hamlet v. United States*, 63 F.3d 1097, 1103 (Fed. Cir. 1995) ("Obviously, not every piece of paper released by an agency can be considered a regulation entitled to the force and effect of law."). Because of this, even if it applied to the facts of this case, informal policies cannot be used as a money-mandating source of law to confer jurisdiction on this Court. *Anderson v. United States*, 85 Fed. Cl. 532, 543 (2009).

Plaintiffs' belief that the statutory cap may not apply is understandable. First, because the Policy does not implicate the GS-15 cap on earnings. And second, because the Policy states "[a]n FLSA-exempt employee may be paid premium pay only to the extent the payment does not cause the total of his/her pay and premium pay for the current year to exceed the maximum of the EL-15 pay grade." (Premium Pay Policy, Section XIII, at 11). Agencies should take care to not only follow their own policies but word them so that employees understand the extent of their benefits. Even so, agencies cannot use administrative rules to expand the scope of legislation beyond what was originally intended by Congress. *Austasia Intermodal Lines, Ltd. v. Fed. Mar. Comm'n*, 580 F.2d 642, 647 (D.C. Cir. 1978). Thus, even if the Court could implement the FHFA-OIG's Premium Pay Policy, it could not extend that application beyond the statute.

Based on this analysis, the United States' Motion to Dismiss Count I is denied. The United States has not shown at this stage that Plaintiffs are exempt from Title V. However, the United States has shown that Plaintiffs' LEAP benefits would be subject to the cap established by § 5547(a). Therefore, the parties are directed to engage in 90 days of phased discovery to ensure that LEAP benefit requirements were complied with for each salaried year identified in the Amended Complaint. At the conclusion of that period, the parties will submit a joint status report indicating the results of discovery and whether it necessitates leave to amend the operative pleading.

## B.   *Count II: Failure to Provide FLSA Overtime Pay*

Should the Court dispose of Count I, Plaintiffs alternatively claim that they are entitled to recovery under overtime provisions of the FLSA (Count II). The FLSA imposes liability in three circumstances: (1) when employers fail to pay a minimum wage; (2) when less than the specified amount of overtime pay is received; and (3) when employers retaliate against employees due to certain activities. Fair Labor Standards Act of 1938 §§ 6, 7, 15; 29 U.S.C. §§ 206, 215(a)(3), 216(b). In each scenario, the employee must be non-exempt from the FLSA. The United States moves to dismiss that claim or grant summary judgment, arguing that Plaintiffs are explicitly labeled as exempt from the FLSA. (Mot. to Dism. at 13–14). The Court cannot summarily rule on the accuracy of such an exemption.

A motion to dismiss for "failure to state a claim upon which relief can be granted" is appropriate under RCFC 12(b)(6) only "when the facts asserted by the claimant do not entitle [it] to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). For a claim to be properly stated, the pleading "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Therefore, only a [pleading] that states a plausible claim for relief survives a motion to dismiss." *Ashcroft*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

FLSA overtime provisions presumptively apply to federal employees unless a specific exemption applies. *See Nigg v. U.S. Postal Serv*., 555 F.3d 781 (9th Cir. 2009) (citing Fair Labor Standards Act of 1938, § 7(a)(1), 29 U.S.C. § 207(a)(1); 5 C.F.R. § 551.202(a)). Generally, employees engaged in production work or manual labor are classified as "non-exempt" and are eligible for overtime under the FLSA. 29 U.S.C. § 207(a), *see also Aamold v. United States*, 39 Fed. Cl. 735, 744–46 (1997). Conversely, executive, administrative, or professional employees are "exempt" from the FLSA and not eligible for overtime. 29 U.S.C. § 213(a)(1). The general rule is that the "application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof." *Abou-el-Seoud v. United States*, 136 Fed. Cl. 537, 562 (2018) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974)).

Office of Personnel Management regulations specifically state that, in determining agency exemptions, the burden of proof rests with the agency that asserts the exemption. 5 C.F.R. § 551.202. However, the United States moves to dismiss solely based on what it perceives to be deficiencies in Plaintiffs' Amended Complaint, not based on the factors of exemption.

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact. *Twombly*, 550 U.S. at 544. Thus, to sustain an FLSA claim, Plaintiffs do not have to use magic language to plead that they were incorrectly classified as exempt from FLSA but instead must allege that they worked overtime and were not compensated for it. Indeed, the Amended Complaint does not specifically allege that Plaintiffs were incorrectly classified as non-exempt, but it can be reasonably inferred. (*See* Am. Compl. at 7–8 ("Since May 20, 2018, and continuing and ongoing, Plaintiffs have worked unscheduled duty hours in excess of eight (8) hours in a day and/or 40 hours in a workweek, so Plaintiffs have been entitled to receive overtime compensation for such work hours. . . ."; "Defendant has failed to pay Plaintiffs overtime . . . in violation of 29 U.S.C. § 207 and 5 C.F.R. § 551.501.")). These allegations amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. 544 (2007).

Plaintiffs adequately plead that the FHFA-OIG policies required them to work without uniform compensation. While each Plaintiff will need to prove the specifics of those overtime hours and applicability of the FLSA to their claims to ultimately prevail, they do not need to plead these claims with such specificity. Therefore, Plaintiffs' Amended Complaint cannot be

dismissed at this point in litigation because the United States has not shown that, as a legal matter, Plaintiffs are properly exempt from FLSA overtime provisions.

Should the Court deny the United States' Motion to Dismiss, the United States alternatively argues that it should be granted summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A "genuine dispute" exists where a reasonable factfinder "could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those which might significantly alter the outcome of the case; factual disputes which are not outcome-determinative will not preclude summary judgment. *Id.* In determining whether summary judgment is appropriate, the court should not weigh the credibility of the evidence, but simply "determine whether there is a genuine issue for trial." *Id.* at 249. In so deciding, the Court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 578–88 (1986).

Attached to the United States' Motion are Plaintiffs' employment contracts, explicitly classifying them as FLSA-exempt. (Mot. to Dism. Ex. A, ECF No. 9-1). However, those exhibits are unavailing to combat Plaintiffs' FLSA claims as they do not show specificities of that exemption. Further, the Court cannot arbitrarily conclude that those exemptions are appropriately applied, particularly when it has not been presented with an argument that they are.

The United States summarily argues that "several plaintiffs retired from the agency more than three years prior to the filing of the initial complaint and their FLSA claims appear barred by the statute of limitations. Similarly, several plaintiffs are former or current regional managers who cannot plausibly challenge their exempt classification." (Def.'s Reply at 9). The United States goes on to state that "[it] is entitled to know[,] from the complaint[,] which plaintiffs are asserting an FLSA claim." (*Id.*). This lack of specificity is particularly vexing because the Government possesses the relevant records. (*See* Am. Compl. at 8 ("[t]he employment and work records for each Plaintiff are in the exclusive possession, custody, and control of Defendant and its public agencies.")). The Court is not in a position to know which of the sixteen Plaintiffs the United States' grievances apply to.

Alternatively, the United States requests the Court order Plaintiffs to identify which of the sixteen Plaintiffs are asserting that claim. Insomuch as the United States is requesting the Court order a more definite statement, the Court declines to do so. RCFC 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Motions under RCFC 12(e) "must point out the defects complained of and the details desired." RCFC 12(e). Such a motion under RCFC 12(e) is "designed to remedy unintelligible pleadings, not to correct for lack of detail." *Adams v. United States*, 151 Fed. Cl. 522, 529 (2020) (quoting *Goodeagle v. United States*, 111 Fed. Cl. 716, 722 (2013)). The remedy for lack of detail in pleadings is discovery, not a more definite statement. *Adegbite v. United States*, 156 Fed. Cl. 495, 511–12 (2021) (citing *Whalen v. United States*, 80 Fed. Cl. 685, 693–94 (2008)). The United States should go forth assuming that each Plaintiff is asserting a claim under Count II.

Based on the foregoing, the United States' Motion to Dismiss Count II of Plaintiffs' Amended Complaint is denied. Likewise, the United States' Motion for Summary Judgment as it pertains to Count II is also denied.

## III.    Conclusion

The Court hereby **ORDERS** as follows:

(1)     The United States' Motion, (ECF No. 9), is **DENIED** as it relates to Plaintiffs' claims grounded in Title V and not HERA. To the extent Plaintiffs are eligible to receive LEAP benefits, those benefits are subject to the cap established by 5 U.S.C. § 5547(a).

(2)     The United States' Motion to Dismiss, or alternatively a Motion for Summary Judgment, as to Plaintiffs' FLSA claim is **DENIED**.

(3)     The United States is directed to file a responsive pleading on or by March 4, 2022.

(4)     Any deadline generated for a Joint Preliminary Status Report in accordance with RCFC Appendix A, Section III, is **STAYED.**

(5)     After a responsive pleading has been filed, the parties are directed to engage in 90 days of discovery to ensure that LEAPA was complied with for each salaried year identified in the Amended Complaint.

(6)     Within the 90 days allotted for discovery, the parties should also conduct discovery as it relates to Plaintiffs' FLSA claim.

(7)     On or before June 3, 2022, the parties shall submit a joint status report indicating the results of that limited discovery, whether it necessitates leave to amend the operative pleading.

(8)     A telephonic Status Conference is scheduled for June 16, 2022 at 11:00 a.m. ET where the parties should be prepared to propose a schedule going forward.

**IT IS SO ORDERED.**



s/   David A. Tapp
DAVID A. TAPP, Judge